the light of the mode of conducting business at the grain elevators, as shown in the testimony, that the foregoing is a sound view of the relation between the grain depositor and the proprietor of the elevator, and that legislation to protect the former against the insolvency of the latter would appear to be called for.

In respect to the claim of the bank upon the two wheat receipts for 12,000 bushels, made by the bankrupts after their failure, to secure $10,000 to their local bankers, I concur so fully in the views of Judge Nelson that I do not deem it essential to do more than refer to his opinion. The decree of the district court, dismissing the cross-bill of the bank is affirmed. The cause will be remanded to the district court with directions to tax the costs in that court equitably as between the receipt holders and the bank. The costs on this appeal will be borne equally between the same parties. Decree accordingly.

[NOTE. In Chase v. Washburn, 1 Ohio St. 244, the receipt of the warehouseman, was: "Milan, O. Nov. 5th, 1847. Received in store from J. C. W. thirty bushels of wheat. H. Chase & Co." The evidence aliunde showing that the wheat was received with an understanding that the warehouseman might dispose of it, and that, upon demand, he would return other grain, or pay for that deposited, the transaction was adjudged a sale and not a bailment, and therefore it was no defense to the warehouseman that his warehouse was destroyed by fire at a time when it contained wheat enough to answer all his outstanding receipts.

So, in the case of South Australian Ins. Co. v. Randell, L. R. 3 P. C. 101, 6 Moore, P. C. (N. S.) 341, as in the case to which this note is subjoined, the receipts issued to the farmers by the miller were "to store," and, under the circumstances stated in the foregoing opinion, the transaction was considered to be a sale.

In 6 Am. Law Rev. 450 [Chase v. Washburn, 1 Ohio St. 244], the reader will find a valuable article entitled "Grain Elevators; the Title to Grain in Public Warehouses." The case Chase v. Washburn is selected "as presenting the ablest exposition of the opposite opinion" to that which the annotator there maintains to be the true doctrine. In that note is cited, perhaps, every reported case on the subject of the title to grain in elevators which had been decided down to April, 1872. The substance of that note will be found condensed in Holmes' edition of Kent's Commentaries. 2 Kent, Comm. (12th Ed.) 590.

The case of Rahilly is one where there was an understanding implied from the known and invariable course of business, that the warehouseman might mingle the specific wheat deposited with other wheat of like quality, and dispose of it at his pleasure, with the further understanding that on demand, he would pay the depositor the highest market price, or deliver the same amount of grain of a like quality, but not the identical grain deposited, nor grain from any specific mass. We have found no adjudged case which holds such a transaction to be a bailment, but there are several directly to the point that it is a sale. Such a case is obviously distinguishable from that of a specific deposit which is not to be changed by the warehouseman, but retained by him until called for by the depositor. This is a bailment. And the case is distinguishable, also, from those where specified amounts of grain of different owners is mixed by consent in specific mass, without any understanding that the warehouseman might dispose of the grain so deposited and mingled. And it may be different from the case where the proprietor of the elevator is a mere warehouseman and where his course of business is, and his duty is, always to keep on hand in the elevator sufficient grain to meet all outstanding receipts, though not the particular grain received. We say it may be different from such a case, but it is doubtful whether it is so. See Johnston v. Browne (1873) 37 Iowa, 200. But where it is known by the depositor that the warehouseman is himself buying and selling grain on his own account, and also receiving grain "in store," and that he intermingles all that is so obtained, and is constantly buying, receiving and selling, so that the mass is continually fluctuating, and there is no fixed time when the receipts are to be presented, it seems impossible to consider the holders of the outstanding receipts as tenants in common of the whole mass of wheat in the elevator in proportion to the amount of their receipts. And such a case seems to be the same in principle as an ordinary general deposit of money in a bank; it creates simply the relation of debtor and creditor; and so the privy council in the Case of Australian Insurance Company, above cited, considered it.

The very recent case of Butterfield v. Lathrop, 71 Pa. St. 225, goes upon the same principle. Here, Baxter and numerous other farmers delivered milk to a cheese factory; each was credited with the amount of his milk, and all was manufactured together; the company sold all the cheese; each farmer was charged with the expense, and received his share of the proceeds in proportion to the milk furnished; Baxter's interest in the cheese, etc. was sold under an execution against him: Held, that the sale by the factory converted his interest into a money demand, and this interest was, therefore, not the subject of a levy. The arrangement at the factory did not constitute the farmers partners nor tenants in common in the cheese; nor was there an agency or bailment as to the particular milk delivered. It was a sale of milk to be paid for in a certain time and manner.

On the general subject see and compare Cushing v. Breed, 14 Allen, 376; Warren v. Milliken, 57 Me. 97; Dole v. Olmstead, 36 Ill. 150; 2 Kent, Comm. (12th Ed.) 590, and cases cited in Mr. Holmes' note. The decision in Rahilly's case was acquiesced in. See Hamilton v. National Loan Bank [Case No. 5,987].

RAHMER (MALLORY v.). See Case No. 8,-992.

RAILROAD BRIDGE CO. (UNITED STATES v.). See Case No. 16,114.

RAILROAD COM'RS (BONDHOLDERS v.). See Case No. 1,625.

## Case No. 11,533.

Ex parte RAILROAD CO.

[See 95 U. S. 221.]

RAILROAD CO. (CAMPBELL v.). See Case No. 2,366.

RAILROAD CO. (COWDREY v.). See Case No. 3,293.

RAILROAD CO. (DAVIS v.). See Case No. 3,648.

RAILROAD CO. (FALLON v.). See Case No. 4,629.

RAILROAD CO. (McDONNELL v.). See Case No. 8,774.

RAILROAD CO. (MORGAN v.). See Case No. 9,806.